EDMUND G. BROWN JR. Attorney General DANIEL G. STONE Deputy Attorney General
THE HONORABLE LOUIS B. GREEN, COUNTY COUNSEL, COUNTY OF EL DORADO, has requested an opinion on the following question:
Where a county maintains a comprehensive database of property-related information that may incidentally contain the home addresses and telephone numbers of persons who are elected or appointed public officials, but who are not identifiable as such from the data, does Government Code section 6254.21(a) require the county to obtain those officials' permission before it may transmit the database over a limited-access network, such as an "intranet," "extranet," or "virtual private network"? *Page 2 
 CONCLUSION
Where a county maintains a comprehensive database of property-related information that may incidentally contain the home addresses and telephone numbers of persons who are elected or appointed public officials, but who are not identifiable as such from the data, Government Code section 6254.21(a) does not require the county to obtain permission from those officials before transmitting the database over a limited-access network, such as an "intranet," "extranet," or "virtual private network."
 ANALYSIS
The California Public Records Act[1] (Act) was enacted to facilitate the people's right to monitor their government's activities, under the principle that "access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state."[2] Under the Act, public agencies must generally disclose their records — including electronic records — in response to a proper request.[3] The Act provides several exceptions, permitting certain records to be kept confidential.[4] The Act also contains a catch-all exception, which allows a public agency to withhold any record upon a showing that "on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record."[5]
The question presented here concerns the construction and application of one specific provision of the Act, section 6254.21(a), which provides that, "No state or local agency shall post the home address or telephone number of any elected or appointed official on the Internet without first obtaining the written permission of that individual." This provision *Page 3 
has posed difficult problems of interpretation for county officials as they explore ways to use the internet to make public records more accessible.
County recorders are the custodians of real property ownership records throughout the state.[6] County treasurers, tax collectors, and assessors also maintain many records that contain the home addresses and home telephone numbers of county residents — including residents who may be "elected or appointed officials" within the meaning of section 6254.21(a), although they are generally not identified as such in these records. Most of these records are maintained in some kind of electronic format. Regardless of their format, the records we are considering are all public records, and therefore freely accessible to members of the public in a variety of ways, including personal inspection as well as requesting paper or electronic copies.[7]
Further, many counties employ or would like to employ internet technology to allow for more efficient uses of these kinds of records. For example, internet technology can be used to give county employees free access to property-related databases for official purposes, whether they are working in or out of the county's offices. Counties would also like to make these databases available to other government agencies for official purposes, or to make these databases accessible within defined limits to private subscribers (typically title companies) who make frequent use of this public information. The question before us presupposes that the relevant information would be confined to a limited-access network. A limited-access network might be styled as an "intranet," "extranet," or "virtual private network," but in any case would employ internet technology in conjunction with security devices that allow access only to a limited group of authorized users. The question, therefore, is whether making these databases available for these purposes would constitute the "posting" of "the home address or telephone number of any elected or appointed official on the Internet" for purposes of section 6254.21(a), so as to require the prior written permission of the affected officials.
Our primary purpose in construing a statute is to ascertain and give effect to the Legislature's intent.[8] In most cases, the plain language of the statute is the best gauge of that intent.[9] For the reasons that follow, however, we believe that giving unmitigated effect to the language of section 6254.21(a) would lead to results that are unreasonable and *Page 4 
inconsistent with the Legislature's true intent.
First, section 6254.21(a) uses certain words and phrases which, if construed expansively, would sweep very broadly indeed. For example, the term "internet," while not defined anywhere in the Act, is used in other statutory schemes to encompass all systems that employ internet infrastructure and protocols, including such secure transmission avenues as intranets, extranets, and virtual private networks.[10] The term "post" as a verb — also not defined in the Act — is frequently understood to mean to enter an item on a general listing.[11] The term "elected or appointed official" is also somewhat indeterminate in this context because section 6254.21(f) states that it "includes but is not limited to" the categories of officials that are listed.
As a practical matter, we believe that a broad and overly literal reading of section 6254.21(a) would lead to unworkable results. Some public agencies, lacking sufficient funds or personnel to conduct the necessary ongoing data review, might conclude that they were forced to refrain from making any property-related database accessible to any internet technology, no matter how secure or limited the network, due to the possibility that the data could contain home information of public officials. Other public agencies, under the pressure of numerous requests to provide property-related information, might conclude that they were forced to review and redact their databases, which would require ascertaining not only who in the database is a public official, but also which address information is the official's home information. Such an identification process would be difficult, time consuming, and inevitably incomplete. Furthermore, the resulting revised property databases, dotted with voids where information had been removed, would no longer be comprehensive and would therefore be of diminished utility to users. We are hesitant to conclude that the Legislature could have intended such impractical results.[12] *Page 5 
Indeed, we believe that if the Legislature had in fact contemplated a comprehensively literal application of section 6254.21(a), that intention would have been more clearly reflected in the statute. For example, the Legislature could easily have been more explicit in its categories of subject officials, rather than leaving that classification open-ended.[13] Consistent with its general policy favoring disclosure of public records, the Legislature could have expressly provided for redaction of officials' home information from the comprehensive body of otherwise disclosable public records, and it could also have addressed the question of how to preserve the integrity and completeness of these official records so that their purposes are still served after the identified home information was redacted. Instead, section 6254.21(a) makes no provision for any of these contingencies.[14] The very absence of any limiting provisions reinforces our belief that the Legislature did not intend section 6254.21(a) to be given sweeping effects.
What, then, did the Legislature intend? Evidence of the intent behind the 1998 enactment[15] is modest but, we think, compelling. The Supreme Court has held that, "a wide variety of factors may illuminate the legislative design," including "context, the object in view, the evils to be remedied, the history of the time and of legislation upon the same subject, public policy and contemporaneous construction."[16]
Here, a legislative committee report indicates that "the author believes that public officials should not have their home addresses or home telephone numbers posted on the public agency Internet websites without *Page 6 
permission."[17] And, in a letter to Governor Wilson dated August 31, 1998, the author of this legislation, Senator Tim Leslie, stated in part:
 This section was added to the bill in response to a recent problem in Sacramento that highlighted the need for this prohibition. The City of Sacramento created a Web site that included the addresses and phone numbers of all public officials residing in the county, including local and state law enforcement officials who could easily be the target of criminals seeking revenge. The controversial Web site was discontinued, shortly after concerns were voiced by several public officials.
We recognize that courts are generally reticent to rely on statements made by an individual member of the Legislature as an expression of the intent of the entire Legislature.[18] Nevertheless, under appropriate circumstances such evidence may be considered.[19] In this case, the author's statements give valuable background to help us understand the beneficial aim of a statute which, if taken out of context, would appear to be both impracticable and at odds with the Legislature's general policies with respect to public records. Placed in its proper context, however, the statute becomes perfectly understandable. Thus, we apprehend the 1998 enactment as having been intended to prevent public agencies from posting on their public websites any list or directory
of public officials' home addresses and telephone numbers, without first obtaining each official's written permission to be included in the listing. This apparent intent informs our conclusion.
We construe the subject of this ban to include all forms of information — such as an agency's roster or directory of officials, or a "contact us" link featured on the agency's public website — which expressly associate home addresses or telephone numbers with specific public officials. In view of the Legislature's manifest concern for protecting the safety and privacy of public officials, we believe that the statute's purpose would also extend to databases which, though they may not explicitly link named officials with their respective home information, nevertheless contain both the home information and the names and titles of those officials, such that a search engine could readily connect each officer with the corresponding personal information using only that database. *Page 7 
But we have found no evidence suggesting that the language should be read more broadly than this. In particular, we find no evidence suggesting that section 6254.21(a) should be construed to prohibit a county from making a property-related database accessible over a limited-access network merely because the database may incidentally contain home information of persons who happen to be public officials, but whose status as such is nowhere reflected in the database. That is not to say that protecting the safety and privacy of public officials is not an important goal. Indeed, this office took a leading role in the Public Safety Officials Home Protection Act Advisory Task Force, whose 2004 report to the Legislature resulted in new measures to protect the home information of certain public officials.[20] Rather, our conclusion is a pragmatic one, intended to give effect to the Legislature's desire to maintain public officials' domestic privacy, but in a way that does not thwart the fundamental and necessary goal of ensuring efficient access to public information.
Of course, nothing in our analysis or conclusion should be read as giving any person greater access to any public record than would otherwise be permitted by law. Specifically, a government agency's creation and use of a limited-access network for official purposes does not require the agency to give any private person access to the limited-access network.[21]
We therefore conclude that, in the circumstances presented here — that is, where a county maintains a comprehensive database of property-related information that may incidentally contain the home addresses and telephone numbers of persons who are elected or appointed public officials, but who are not identifiable as such from the data — Government Code section 6254.21(a) does not require the county to obtain permission from those officials before transmitting the database over a limited-access network, such as an "intranet," "extranet," or "virtual private network."
[1] Govt. Code §§ 6250 et seq.
[2] Govt. Code § 6250; see Cal. Const. art. I, § 3(b); Times MirrorCo. v. Superior Court, 53 Cal. 3d 1325, 1338-1339 (1991).
[3] Govt. Code § 6253.9; see Cal. Atty. Gen. Off., Summary of theCalifornia Public Records Act 2004 3-4 (Cal. Atty. Gen. 2004).
[4] See Govt. Code §§ 6254-6255.
[5] Govt. Code § 6255.
[6] Govt. Code §§ 27201, 27280 et seq.
[7] See Govt. Code. §§ 6253, 6253.9.
[8] E.g. Dyna-Med, Inc. v. Fair Employment Housing Commn.,43 Cal. 3d 1379, 1377-1387 (1987).
[9] Id.
[10] See e.g. Bus. and Professions Code §§ 27, 11018.5, 17538(f)(6); Educ. Code § 51705(b); Veh. Code § 11614(f); see also Pavlovich v.Superior Court, 29 Cal. 4th 262, 265 (2002).
[11] See e.g. Webster's 3d New Internat. Dict. 1771 (Merriam-Webster, Inc. 1993) ("to enter (a name) on a public listing"); Black's LawDictionary 1204 (Bryan A. Garner ed., 7th ed., West 1999) ("to transfer (accounting entries) from an original record to a ledger").
[12] See Commission on Peace Officer Standards and Training v.Superior Court, 42 Cal. 4th 278, 290 (2007) (settled principles of statutory interpretation hold that language of statute should not be given literal meaning if doing so will result in absurd consequences).
[13] To the contrary, the Legislature declined to limit the universe of public jobs and titles that may be included within the category of "any elected or appointed official." See Govt. Code § 6254.21 (f) (West. Supp. 2008) (historical and statutory notes, Sept. 8, 2005 letter from Assemblymember Noreen Evans, stating, "The list of elected and appointed officials in subdivision (f) . . . is a partial list and not intended to in any way limit the ability of officials not explicitly specified in the bill . . . to benefit from its provisions.")
[14] The Legislature plainly knows how to require the removal of specific details from larger databases when it wants to. Government Code section 84602(d), for example, providing for online disclosure of campaign and lobbying information, states that information made available on the internet "shall not contain" the street addresses or bank account numbers of persons named on electronic filing forms. In another example, Vehicle Code section 1808.4 requires the Department of Motor Vehicles to keep the home addresses of specified persons confidential, upon request of the person.
[15] Stats. 1998, ch. 429, § 5.
[16] Id. (internal citations omitted).
[17] Assembly Comm. on Appropriations, Rep. on Sen. Bill No. 1386 (1997-1998 Reg. Sess.) Aug. 5, 1998 (as proposed to be amended).
[18] Walters v. Weed, 45 Cal. 3d 1, 10 (1988).
[19] Id.
[20] See Govt. Code § 6254.21 (c)-(f) (West. Supp. 2008) (historical and statutory notes).
[21] Govt. Code § 6253.9 (f), (g). *Page 1